16-3822-cv
*Evan A. Davis v. New York State Board of Elections, et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of May, two thousand seventeen.

PRESENT:  AMALYA L. KEARSE,
GUIDO CALABRESI,
JOSÉ A. CABRANES,

*Circuit Judges.*

---

EVAN A. DAVIS,

*Plaintiff-Appellant,*                                    16-3822-cv

v.

NEW YORK STATE BOARD OF ELECTIONS, PETER S. KOSINSKI, in his official capacity as Commissioner of the New York State Board of Elections, DOUGLAS A. KELLNER, in his official capacity as Commissioner of the New York State Board of Elections, ANDREW J. SPANO, In his official capacity as Commissioner of the New York State Board of Elections, GREGORY P. PETERSON, in his official capacity as Commissioner of the New York State Board of Elections, NEW YORK CITY BOARD OF ELECTIONS, BIANKA PEREZ, in her official capacity as Commissioner of the New York City Board of Elections, JOHN FLATEAU, in his official capacity as Commissioner of the New York City Board of Elections, MICHAEL A. RENDINO, in his official capacity as Commissioner of the New York City Board of Elections, ALAN SCHULKIN, in his official capacity as Commissioner of the New York City Board of Elections, LISA GREY, in her official capacity as Commissioner of the New York City Board of Elections, SIMON SHAMOUN, in his official capacity as Commissioner of the New York City Board of Elections, MARIA R. GUASTELLA, in her official capacity as Commissioner of the New York City Board of Elections, MICHAEL MICHEL, in his official capacity as Commissioner of the New York City Board of Elections, FREDERIC M. UMANE, in his official

capacity as Commissioner of the New York City Board of Elections, JOSE MIGUEL ARAUJO, in his official capacity as Commissioner of the New York City Board of Elections,

*Defendants-Appellees,*

CITY JOHN DOE, OFFICERS OF THE NEW YORK CITY BOARD OF ELECTIONS, STATE JOHN DOE, OFFICERS OF THE NEW YORK STATE BOARD OF ELECTIONS,

*Defendants.*

---

| | |
|---|---|
| **FOR PLAINTIFFS-APPELLANTS:** | LAWRENCE B. FRIEDMAN and Joaquin P. Terceño, Cleary Gottlieb Steen & Hamilton LLP, New York, NY. |
| **FOR MUNICIPAL DEFENDANTS-APPELLEES:** | MELANIE T. WEST and Claude S. Platton, *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY. |
| **FOR STATE DEFENDANTS-APPELLEES:** | PHILIP V. TISNE, Assistant Solicitor General, Barbara D. Underwood, Solicitor General, and Steven C. Wu, Deputy Solicitor General, *on the brief*, *for* Eric T. Schneiderman, Attorney General of the State of New York, New York, NY. |

Appeal from an order of the United States District Court for the Southern District of New York (John G. Koeltl, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the November 7, 2016 order is **AFFIRMED**.

Plaintiff-appellant Evan A. Davis brought an action against the New York City and New York State Boards of Elections (collectively, the "Boards") and the Boards' commissioners, alleging that Sections 6-138, 6-140, 6-146, and 7-104 of the New York Election Law (the "Candidate Laws") violate the First and Fourteenth Amendments to the United States Constitution. The District Court dismissed his claims for lack of subject-matter jurisdiction, holding that Davis lacked standing to challenge the Candidate Laws. On appeal, Davis argues that the District Court erred in concluding that he is not suffering a current "injury in fact," that his claims were not prudentially ripe, and that he lacked third-party standing. We assume the parties' familiarity with the factual and procedural history of the case, though we summarize the critical portions of that history below.

# I.    Background

Article 19 of the New York State Constitution requires that, once every twenty years, the citizens of New York State vote to determine whether to hold a State Constitutional Convention. The next vote for a Constitutional Convention is set for November 2017. If a majority of New Yorkers vote in favor of holding a Constitutional Convention, then an election to select Delegates for the Convention will be held in November 2018. The Constitutional Convention itself, if one were to take place, would be held in April 2019.

Davis is currently campaigning to urge a majority of New Yorkers to vote in favor of calling a Constitutional Convention. If the vote for a Convention succeeds, Davis intends to run for election as a non-partisan Delegate. To secure a position on the (presently hypothetical) ballot listing candidates for Delegate, Davis would have to secure 3,000 voter signatures. Davis wants to campaign for the Convention and, if the voters elect to hold a Convention, to campaign for the position of Delegate, on a reform platform premised on the idea that voters should elect Delegates that are unaffiliated with any political party or group. He believes that this specific message is critical to his goals because, according to Davis, if voters think that partisan interests will dominate a Constitutional Convention, then they will vote against calling one.

Davis alleges that the Candidate Laws prevent him from running as an independent candidate for Delegate and from campaigning for a Convention on the platform of his choice. The Candidate Laws, in sum and substance, require that all individuals seeking to be elected as Delegates to the New York State Constitutional Convention, who are not nominated by a party whose candidate for Governor of the State of New York received at least 50,000 votes, must include a nominating body name and emblem on their nominating petitions, which will appear alongside a candidate's name on the ballot. *See* N.Y. Elec. Law §§ 6-140, 6-146, and 7-104. If a candidate does not include a nominating body name and emblem on his nominating petition, the "officer or board in whose office the petition is filed shall select an emblem or name or both to distinguish the candidates nominated thereby." *Id.* at § 6-138(3)(f). There is no requirement that the nominating body and emblem selected by the potential candidate reflect an actual, existing, or formal organization. For example, the name of the nominating body could be "Voters for Davis," "Unaffiliated," or "No Party."[1]

According to the declaration Davis submitted to the District Court, his campaign for both the Constitutional Convention and his own candidacy for Convention Delegate are substantially under way. He has already "registered the [finance] committee Friends of Evan Davis with the

---

[1] The physical constraints of the ballot prevent more than fifteen letters of a party's or a nominating body's name from appearing on a printed ballot. Names that are longer than fifteen letters may "be printed on the ballot in an abbreviated form." N.Y. Elec. Law § 7-104(2).

[Boards,] . . . established a website, www.friendsofevandavis.org . . . [and] started soliciting contributions." A 41–42. He has also already "organized, met, and corresponded with an informal discussion group of persons . . . who favor calling a Constitutional Convention." *Id.* at 42.

## II.     Davis Lacks Standing to Challenge the Candidate Laws

In dismissing Davis's challenge to the constitutionality of the Candidate Laws for lack of standing, the District Court concluded that neither of his two alleged injuries satisfied Article III's requirement that a plaintiff suffer an "injury in fact." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). We agree.

We review *de novo* the District Court's dismissal of Davis's complaint for lack of standing. *See Thompson v. County of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994). To satisfy the requirements of Article III standing, a plaintiff must establish three elements:

> (1) the plaintiff must have suffered an injury in fact, i.e., an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (internal quotation marks omitted). Constitutional ripeness, which is an overlapping doctrine, is best thought of as "a specific application of the actual injury aspect of Article III standing." *Id.* Thus, "to say a plaintiff's claim is constitutionally unripe is to say that plaintiff's claimed injury, if any, is not actual or imminent, but instead conjectural or hypothetical." *Id.* To determine "whether a litigant has standing to challenge governmental action as a violation of the First Amendment" in particular, the litigant must demonstrate "a claim of specific present objective harm or a threat of specific future harm." *Meese v. Keene*, 481 U.S. 465, 472 (1987) (internal quotation marks omitted).

As an initial matter, Davis contends that, when the District Court was evaluating whether he had established the existence of subject-matter jurisdiction, the District Court held him to a higher standard of proof than was appropriate at the motion to dismiss stage. The District Court concluded that Davis "b[ore] the burden of proving the Court's jurisdiction *by a preponderance of the evidence*." *Davis v. Kosinsky*, No. 16-CV-1750 (JGK), 2016 WL 6581300, at *1 (S.D.N.Y. Nov. 4, 2016) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)) (emphasis added). Davis argues that the correct legal standard, which the District Court did not apply, is that a plaintiff "must allege facts that affirmatively and *plausibly suggest* that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (emphasis added). We need not address this dispute because we conclude that Davis fails to satisfy the requirements of Article III standing under either a preponderance or a plausibility standard.

4

The District Court construed Davis's complaint as alleging two possible injuries. The first alleged injury is that the Candidate Laws prevent Davis from appearing on the ballot for Convention Delegate as a non-partisan candidate. The District Court concluded that this alleged injury was "conjectural or hypothetical" and not "actual or imminent" because the claim was based entirely on contingent future events. *Davis*, 2016 WL 6581300, at *5. For example, the District Court correctly observed that for Davis to reach the point of even appearing on the ballot a majority of New Yorkers would have to vote in favor of calling the Convention and 3,000 voters would have to sign a petition nominating Davis. While Davis provides reasons why, in his opinion, these events are likely to happen, they remain entirely hypothetical. Consequently, any injury that would result from the forced association between his name and a nominating body on any future ballot is speculative. *See Thomas v. City of N.Y.*, 143 F.3d 31, 34 (2d Cir. 1998) ("[W]hen resolution of an issue turns on whether 'there are nebulous future events so contingent in nature that there is no certainty they will ever occur,' the case is not ripe for adjudication." (quoting *In re Drexel Burnham Lambert Group Inc.*, 995 F.2d 1138, 1146 (2d Cir. 1993))). For that reason, we agree with the District Court that this alleged injury does not provide Davis with standing to challenge the Candidate Laws.

Davis's second alleged injury is that the Candidate Laws hamper his ability to campaign for a Constitutional Convention. The District Court concluded that this alleged injury was not an "injury-in-fact" because Davis was already engaging in the political speech he claimed was being unconstitutionally burdened, *i.e.*, campaigning for the Convention. *Davis*, 2016 WL 6581300, at *4. On appeal, Davis argues that the District Court misconstrued his injury: while the Candidate Laws did not prohibit him from campaigning for the Convention, they prevented him from *truthfully* advocating for a Convention by assuring voters that they could elect delegates who were "non-partisan and independent of any political party or group." A 42. The alleged injury, according to Davis, was not that the Candidate Laws prevented him from telling voters they could elect independent Convention Delegates, but that, because the Candidate Laws required each Delegate to select a nominating body name and emblem, he risked damaging his reputation with voters if he told them (in his view "lied" to them) that they could elect non-partisan Delegates.

Allegations that a particular law caused a "subjective chill" in a plaintiff's speech are not "an adequate substitution for a claim of specific present objective harm or a threat of specific future harm," which is necessary for establishing standing in a First Amendment action. *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). However, as the Supreme Court observed in *Meese v. Keene*, if a law puts a plaintiff "to the Hobson's choice" of not speaking in a particular way or "suffering an injury to his reputation" by exercising his right to speak in that way, that plaintiff has standing to challenge the constitutionality of the law in question. 481 U.S. at 475. The underlying theory is that reputational damage to an individual, particularly a political figure, is a cognizable injury for purposes of Article III standing.

Contrary to Davis's arguments on appeal, the *Meese* theory of reputational harm is not applicable in the circumstances presented. Nothing about the Candidate Laws require any future candidate for Delegate to be affiliated with any political party or group. For that reason, Davis would not mislead voters if he tells them that they can elect non-partisan Convention Delegates and, thus, Davis is not subject to a threat of reputational harm if he campaigns for the Convention on his desired platform. If Davis cannot successfully explain to voters the differences between the required "nominating body" and existing partisan political groups, the fault lies with Davis and not the Candidate Laws.

While the law obliges prospective candidates for Delegate to list the name and emblem of a nominating body on their nominating petition it does not require that that body be a political organization. In fact, the "nominating body" need not be a "body" at all; it can be an entirely fictional construction invented for the sole purpose of meeting the requirements of the Candidate Laws. *See* N.Y. Elec. Law § 6-138(3)(f) (explaining that the purpose of having a nominating body name and emblem listed on a ballot is "to distinguish the candidates nominated thereby"). Moreover, the mere fact that a prospective candidate provides a name purporting to represent the 3,000 voters who signed his or her nominating petition does not transform that collection of voters into a cohesive political body in the manner alleged by Davis. To that end, Davis could select a name for his nominating body, such as "Unaffiliated," "No Party," or "Non-Partisan," which signals his lack of affiliation with any political group. He might even choose the name of his already existing finance committee, "Friends of E. Davis," which, despite identifying a group of individuals supportive of Davis's candidacy for Delegate, paradoxically does not cause Davis the same reputational harm allegedly caused by the Candidate Laws.

In sum, we agree with the District Court that Davis has failed to allege any "injury in fact" and, therefore, has not established that he has standing, at this moment, to challenge the constitutionality of the Candidate Laws. *See Walsh*, 714 F.3d at 688. In addition, because Davis argues that he has third-party standing on the basis of the same alleged injuries, we conclude that he lacks third-party standing as well. Finally, we need not address the District Court's alternative grounds for dismissing Davis's complaint—a lack of prudential ripeness—because we have already concluded that the District Court lacks subject-matter jurisdiction.

**CONCLUSION**

We have considered all of the arguments raised by Davis and find them to be without merit. For the foregoing reasons, the November 7, 2016 order is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
